Good morning, Your Honors. If it may please the Court, my name is Dirk Manoukian, and I am the attorney for the appellant plaintiffs in this matter, the surviving members of the Bailey family. As the Court mentioned, this is your discussionary function morning, and the test is the same as we have just discussed. I will break the Berkovitz argument into the two points. It's presented as in the case law. In regards to whether or not this is a mandatory versus specific function, I think that the dispositive issue in this case is the existence of a site-specific plan. Similar to the case in Naberet, which dealt with the drop-off, very similar to our situation, there is a specific mandate regarding, or a general mandate regarding signs. There is a site-specific mandate in this case demanding that the because it's a critical safety issue. This is a submerged dam where the boaters have absolutely no notice of this except for the signs. And without those signs, this is literally a deathtrap. So unlike certain situations where you have just a general mandate, here the site-specific plan says that those signs are critical, that they're imperative, and that they need to be replaced as timely, as soon as you can, once those signs, once it becomes a what the government becomes aware the signs are missing. And in this case, the government had actual knowledge that the signs were missing. The signs were a 10, 15-minute drive away from the dam. And the upcoming Memorial Day weekend is the busiest weekend on this river where the government knew people would be on this river, many of them unfamiliar with it. But there's evidence here that it was too dangerous to put the signs up because of the high water? Well, Your Honor, I have two issues with that. The first is that I do not believe it's appropriate for a government entrusted with protecting the public to say it's so dangerous we can't warn you about it. I think that's an inherent flaw in that argument. Well, let's stop there, because there are obviously situations. I mean, in the middle of a hurricane, you're not going back and putting up the signs again. There are circumstances that have to be taken into account. You can argue about the extremity, but I don't think you can stake out the position that the government has to disregard its own safety because certain conditions are dangerous. As a practical matter, the signs had been put up and knocked down, and there's no telling that they would have, if put up again, would have been knocked down again. So what is it that made this a decision that the government isn't entitled to make and weigh the factors that it had to weigh? That's jumping into the second part of the Berkowitz analysis, Your Honor. And those points the Court raises are issues that goes to whether or not there really was negligence. The question is, what's the conduct here? The conduct is safety-related putting up signs. And this Court, other courts have consistently held that safety-related plans are not subject to the limitation of or to providing immunity to the government. The ---- But that does not ignore the consideration of public policy, which Judge Fletcher just mentioned a moment ago, which was the risk to the agency, people putting the signs up. This case sounds to me like a lot more like Miller than the last case. Well, and I would respectfully disagree, Your Honor. Those issues are issues that are to be discussed in the design phase. If the government wants to say, you know what, this is such a dangerous situation that we're going to choose to warn people by land-based signs and we're going to hand out brochures at the local ranger station, that's fine. But once the government has taken the obligation to protect the public, you cannot then hide behind the policy considerations in a safety-related issue. It's similar to ---- Timely doesn't involve anything other than the clock? You're supposed to go out there in the middle of the night if you don't have any lights and put it up? And again ---- Or do you have to wait until daylight? And why do you have to wait until daylight? We're jumping back to the first part of the Berkowitz, Your Honor, analysis. And I think that Timely does allow for some leeway. Of course. Some leeway. But here, in this case, with the complements of the ---- Can Timely also say when the river goes down? That's not included in their very specific site plan, Your Honor. And again, let's say for the purposes of this ---- Timely includes nighttime, but not high river, right? Timely, when read in conjunction with imperative and critical and public safety, means as soon as you can. All right. As soon as you can is one of the considerations that can be taken in mind by the government is not to risk the lives of the Forest Service rangers to go out and put signs up. And in this ---- in the particular case regarding Timely, perhaps it does. But that doesn't address the concern of the Berkowitz court and this court in Wisnon. When ---- once you get past that, once you deal with ---- it's at the design phase, those are the pertinent issues. Once you've given someone the responsibility to mark this river safely and the decision was made that there would be water-based signs, that there would be signs right near the submerged dam, once you've made that decision, you cannot then step back and say it's too dangerous for us to go in and that's why we didn't do it and we have immunity. The statute itself says there's this one exception. It notes specifically in a footnote. Our case law reveals one exception, not relevant there, to this ---- to the divide that's drawn between design and implementation, which sounds to be analogous to what you're trying to say once the decision has been made to put up signs. And it identifies that as being where the implementation itself implicates policy concerns such as where government officials must consider competing firefighters' safety and public safety considerations and so forth. If the government's reason for not going out and putting up the signs immediately is concern about employee safety, why doesn't that fit squarely within the footnote that Wisnot carves out? Because I don't believe that footnote is addressing the situation where it is purely the implementation of that rule, Your Honor. What Wisnot goes on to say is that in a safety situation, there is not the considerations of social, economic, and political policy that would support not going in and doing that. That is certainly valid in a response to a claim for negligence. We've got two kinds of safety here. I mean, we've got ---- usually safety comes up as putting up signs in the national park, putting up barricades and so forth. The long-term, what's the best interest of the public? We want to keep the public safe. And then we have safety in a different sense, which is what I think the footnote in Wisnot refers to, which is in the implementation itself, the firefighter safety, the reference to Miller. Well, yes, we're trying to keep the public safe. There's no policy decision there. But in terms of how to do that, the implementation may involve the safety of our employees. And that is, as I read Wisnot, a policy-type factor. And if the issue here is whether it's safe, the issue isn't whether should you put up signs. They decided to put up signs. The issue is can they put them up today, given the high water conditions. And if that sounds to me much more like a short-term, immediate employee safety decision, which I understood Wisnot to say is an exception to the broad rule with regard to safety. Well, and with all due respect, Your Honor, I would disagree with that. I think that the policy decisions that they're talking about in the implementation is directed towards what the government do in certain situations. This particular situation, the implementation of those signs, if they had — because, keep in mind, nothing was done. No signs were put up. There was no sign on the — Well, signs had been put up. There's no question, but the Forest Service intended to have signs up and did a few weeks before have signs up. They were wiped out by the high water. And apparently all the signs are wiped up by the high water. Yes, Your Honor. So the question became replacement. Exactly. And the timeliness of that replacement and the implementation of the site-specific plan, that because it's such a critical safety measure, those signs have to go up because it's imperative in a timely manner. And all of that argument regarding the implementation aspect addresses whether or not the government acted reasonably. No question that if it is unsafe, if that's their argument, I don't believe that's factually accurate. Keep in mind there were, you know, normal, everyday folks going out there in canoes and things on this river. So I don't think factually it would be accurate to say it was unsafe. But assuming that that's an argument the government could make, that should be reserved for a trial court. That should be reserved to say, hey, we weren't acting negligent. These are the four reasons why we weren't actually negligent. The proposal by the government for its policy reasons regarding employee safety, what the Court has referenced, and then it goes on to talk about public safety. Well, clearly that wasn't the case here. What they did was the antithesis of public safety. They created basically a death trap by a hazard that you could not see that was going to result and did result in a catastrophic event. And then to go on regarding staff availability, resource management, I think the Court, unless you have specific questions on that, would agree that that's not an appropriate policy consideration in dealing with safety issues. So the plaintiff's position, the appellant's position in this particular case is that when you're dealing with a safety concern that not dealing with it, the result is catastrophic. You need to act reasonably. And you are protected by that standard, that if the government can come in and say we did act reasonably, so be it, and that is fine. If they can't, then they've acted negligent. And whether it's maintaining a road, whether it's maintaining a lighthouse, whether it's maintaining the signs on a river, if they've acted negligently and that act of negligence has caused an extreme loss like it has here, they should be liable for that. Kennedy. Why are we not bound by Miller? I'm really having difficulty understanding. We can't make new law, even if we agree with you. Why are we not bound by Miller? Well, I think Miller is distinguishable on its facts, Your Honor. There was no plan. There was no guidelines for the multiple-fire circumstance for which they were dealing with. They were doing the best they could under that situation. But there can't be any particular sign, there can't be any particular plan for fighting a fire other than leaving it up to the strategy of the firefighters, because you don't know when it's going to hit. Well, I mean, I think there certainly could be a plan, Your Honor. I don't want to – I mean, you could say that the – that what you are to do is to go to the largest fire, graduate down to the next fire, the fire that gets priority is the one closest to property or lives are in danger. I think there's a number of protocols you could put into place to govern that. Miller is distinguishable because there was no particular plan and there was one here, right? Correct. Because Miller was – What else? Well, I think that distinguishes Miller. And Your Honor, I would like to reserve some time for rebuttal, so if there is any other questions at this moment, I would take them, but I would yield the microphone. May it please the Court, my name is Matthew Burton and I'm here representing the appellee of the U.S. Government in this case. In listening to the discussion in the previous case as well as so far in this case, it's clear that the Court has a thorough understanding of the relevant legal principles in the discretionary function analysis, as well as how they apply in this particular case. But would you agree that there is a difference between firefighting and this case? I see Miller as very sensibly saying that there's so many variables in fighting a fire that we have to leave it up to the government's discretion as to what they do. Here, there was a specific plan, you must put up signs. It's not one of these cases where in the national park you have to decide between the beauty of the scene and the access to the trails and so forth, where there's discretion to be allowed. But discretion here has been taken away to the extent that it says there must be signs. Your Honor, I would respectfully disagree that there is a principle difference between fighting fires and addressing missing signs that have been washed away by a river. Both cases deal with instances of nature gone awry and instances where the relevant government employees have to address those problems caused by nature. Well, I would certainly agree that the government may not be liable here at all, because they may not have been negligent at all. But I see a difference between the situations where the social, economic, so forth, general policy has to be up to the discretion. But when it comes to safety, and the government has decided this is a very dangerous place, there have to be signs put up, they're washed away, then I think they have an obligation to determine whether they have to wait until it's safer to go out into the river or whether they put the signs up on the bank. And that's the implementation. It's not wide policy. But I think we should look to the guidance provided by the Supreme Court in both cases where not only was the design of the government program in those cases protected by the discretionary function exception, but the decisions, the specific decisions by the individual government employees in executing those programs were protected as well. So not only in Varig was the design of the FAA spot check program protected, but the decisions by individual employees as to how to carry out that spot check program, what sort of inspections to undertake with regard to particular aircraft manufacturers also were protected. Here, the same is true. The Army Corps of Engineers has developed a sign, national sign program where it envisions and specifically delegates and confers to local Army Corps officials the discretion to make judgment calls about all sorts of issues related to sign placement, repair, and replacement. That is exactly the type of decision. It's part of the execution of the program. And — Once the government has said this is a very dangerous place and there must be warning signs, I think that the discretion is gone in terms of saying, well, we're not going to do anything because it's dangerous, because they could put signs on the ground, they could have rangers posted, there are all kinds of things that they could be done. They had to do something. That discretion was gone. But there are all sorts of things they could do. But the local corps personnel have to evaluate the changing conditions, and in this case, the changing conditions of the river, and they have to make judgment calls about what is the most appropriate action to take. They are making those — But they had to take an action, and they didn't. Is that correct? But even if they — they did ultimately take an action, but even if they didn't, the discretionary function exception includes incorrect or failures to make decisions. It includes instances where there may have been negligence. The exception still covers and applies in those instances where there is discretion to execute a program to further the objectives of that program. But there are multiple cases which tell us that implementation is outside of the policy decision. It's how they did it, you get over into negligence. It's not that the government can't defend itself. It's just that it can't defend itself by saying that you can't touch it because it's discretionary whether we comply with a mandatory obligation. But again, here I return to the Supreme Court's broad guidance in Galbert and Varig Airlines and other cases like Dale Height, where when the execution of the program, the individual decisions by government employees to carry out the objectives of that program are made, they are included within the discretionary function exception. And here there's a point I would like to make with regard to plaintiff's counsel's conflation of what the guidelines say and what the sign plan says. The guidelines are quite broad. As this Court has recognized, they only state that make this common-sense statement that signs be replaced in a timely manner. The sign plan, which you can find on page 139 of the record excerpts, is a rough, broad diagram that is not intended to cabin or restrict the discretion of local court personnel in making decisions, and nor should it restrict that discretion. The court has to maintain the ability and the flexibility to adapt to changes in local conditions, and in this case with regard to the river. And nor does the sign plan address the issue of timing. It's a rough diagram that gives general guidance about where signs should be placed on the river. One has to return to the guidelines themselves. What if the facts were that they just didn't replace the signs at all? They let months go by. Now, did they still have discretion to determine whether that was timely or not? They did, yes, Your Honor, but let me explain. The decision You're saying yes, that they have a free hand, they don't have to do anything? They have the discretion to decide when to replace the signs, if to replace the signs, where to replace the signs. These are all part of the discretion conferred by the guidelines about the placement decisions that the court is supposed to make. The sign program and the sign manual recognize that in order to achieve its goals of maximizing the effectiveness of individual signs as well as the collective statement of signs at a project and to address the safety concerns that the Army Corps has to address. You're saying that it's all right to do nothing. I am saying that the decisions about when to replace the signs, regardless of what those decisions are, are part of the discretion that the sign program grants to local Corps officers to make. But the government is not making the claim in this case that the Corps should, could have waited to or never have replaced the signs. And that's not an issue either. The signs have been washed away. Ten days later, a tragic accident did occur. The Corps had to evaluate a number of considerations in determining, excuse me, the decisions that the Corps had to make with regard to replacement was susceptible to a number of considerations. As Judge Bea and Judge Clifton have identified, there are the classic balance of safety considerations that the Corps has to undertake. The Army Corps of Engineers, one of its main purposes is addressing floodlight conditions. It has great experience and expertise to determine when certain risks are enough to take certain action or not take certain action. And they are exercising that judgment in cases such as this, when they're deciding when to replace signs. Where is the line? I mean, you say the government's not, on one issue, maybe theoretically the government's trying to lay claim to there being discretion forever. But as a practical matter, the government isn't taking the position, or I take it won't assert the position, that it's always discretionary. At some point in time, and perhaps, well, I'm trying to find out from you where that line is, if there is a line. If the high water had washed out these signs, and three years later the signs still aren't back there, would you agree that the line has been crossed, so it's no longer a discretionary policy-based decision not to put the signs back? Respectfully, Your Honor, not necessarily. There could be many reasons why the Corps decides that it's not appropriate to replace the signs in the exact same spot. Perhaps the conditions of the river were different. I mean, theoretically, there are always possibilities. And so it could be said that theoretically any sign placement decision could involve one of those. But as a practical matter, that's not how it works. Ordinarily, if there's a sign that's supposed to be there, and it's not there, and years later it's not there, and there's no good reason for it not being there, except nobody bothered to put it back up, although theoretically it could be said that there are other considerations, I don't think anybody would actually seek to or successfully apply a discretionary function exception. What is it about these circumstances that justify the Corps' treatment of this as being within its discretion based on a policy-based factor? Well, in addition to being the execution of the overall program and the decision to be You need to be careful with that, because implementation ordinarily doesn't fall on the discretionary function side of the line. I mean, the classic line, which I'm not saying is completely black line and solid, and the Supreme Court's raised questions and so forth, but you do have some sense of difference between design and implementation. That's what Turbush, whichever is the most recent case, like, I mean, in broad terms there's a difference between those categories. So in broad terms, pure implementation isn't viewed as a logical candidate for protection under the discretionary function exception. Okay, this may not be typical implementation, but what is it about this that suggests that it, as the government's position, that it does qualify for that kind of exception? Well, I think this Court has already identified some of those considerations. And as I was indicating before, the Corps of Engineers had to engage in a classic balance of considering the risks and taking into account the risks to the safety of the public with regard to when to replace these signs, as well as the risks to its own employees for having to undertake the sign operations that would be required in this instance to replace signs on the river. And the issue of resource allocation is also relevant and important here and something that the Corps of Engineers would have to consider. And all of these considerations have to be balanced against, again, against changing and evolving local circumstances and conditions with regard to the river. These Army Corps officials are the most knowledgeable about this particular project and the river that the dam sits on. And they evaluate those conditions on a daily basis, on a weekly basis, and have, in their judgment, have the discretion to make decisions, not only in their judgment, but as the guidelines provide, have the discretion to make decisions about what is the most appropriate timing to replace these signs. All of these considerations are relevant and the decisions here are susceptible to those considerations. It sounds to me, Counsel, that in the evaluation of the risk and determination of what resources to use, that's a classical negligence issue. Did the defendant appreciate the risk? Did he use reasonable care in affronting the risk? But that, Your Honor, that is not the question we're asking. The question is whether the That's not the question you want to ask, but it's the question the plaintiff wants to ask. That is the question. But that is not relevant here. Even if the Army Corps of Engineers miscalculated and made a mistake or was negligent about the failure to put the signs back up, again, those are not relevant here to the discretionary function analysis. This exception covers even what might be negligent acts. In short, the decisions at issue here were clearly discretionary. The guidelines confer discretion with regard to when to replace these signs. And the signs were part of an overall program Excuse me. The replacement decisions were part of the execution of an overall program in accordance with the design of that program to achieve the objectives of that program. And even if this Court feels that the decisions here were the implementation of an established policy, as was discussed and the distinction was made clear in Wisnant, the footnote here is relevant. And this balance of safety concerns is squarely within the footnote as described in Wisnant as the balance of safety concerns and considerations between the safety of the public and the safety of Army Corps of Engineers. For all those reasons, the judgment of the district court should be affirmed. And if there are no further questions, thank you, Your Honors. Roberts. Thank you. For rebuttal. Thank you, Your Honors. Your Honor, I would answer the question, where is the line drawn by the reasonable person standard? There is no – nothing involved in the policy decision the government's making that makes it any different than any other decision that any other business makes. This isn't a situation where the government be – should be protected from negligence because of a very unique policy decision that only the government is making. In addressing that footnote, the footnote in Wisnant about Miller and I think Allfree, those were situations where in Miller there wasn't a specific plan on how to deal with multiple fires. In Allfree, there wasn't a specific plan on how to deal with the specifics of searching an inmate cell. There, by the lack of specificity in the mandate, they had to use their own judgment. But there's no specific plan as to what timely means either. Timely can take into consideration the – whether it's light out or whether it's dark out. And it could also take into consideration whether the river's up and dangerous or whether the river's down and non-dangerous. Absolutely, Your Honor. My focus at this point, though, is on that second phase of Berkowitz, where we're talking about whether or not the decision made, the conduct, is the type that the Congress intended to protect. This is a compensatory act. The Congress's idea was to let people recover for losses caused by the government unless there's a good reason not to. This Court has said that exceptions should be read narrowly, that the overall act should be construed liberally. And when you have a situation where the government says they're going to do this and they don't, people rely upon that. If they – all the different arguments. Counsel said that they have the discretion to determine when and if to replace. Absolutely not. They have to replace those in a timely manner. And the policy decisions that they're making about whether it's safe to do it, whether there's a better way to do it, those are all everyday decisions that normal businesses make. And in this case, the government should not be afforded immunity. Litigation is intended to change bad behavior, and this is bad behavior that needs to be changed, Your Honor. And I see I'm out of time, so absent any questions, I will sit down. We thank you. We thank both counsel for your helpful arguments. The Bailey case just argued is submitted.
judges: Fletcher B. , Clifton, Bea